IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Joseph Berry, #304171,  ) | |
| ) | Civil Action No. 6:07-3298-TLW-WMC |
| Petitioner,  ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs.  ) | |
| ) | |
| Robert H. Mauney, Warden,  ) | |
| Northside Correctional Institution,  ) | |
| ) | |
| Respondent.  ) | |
| ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

**BACKGROUND OF THE CASE**

The record reveals that the petitioner is currently confined in the Northside Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Greenville County Clerk of Court. The Greenville County Grand Jury indicted the petitioner at the September 2003 term of General Sessions for armed robbery (2003-GS-23-6659) and attempted armed robbery (2003-GS-23-6662). Attorney Steve Evans represented the petitioner. On August 5, 2004, the petitioner pleaded guilty as indicted. The Honorable D. Garrison Hill sentenced the petitioner to concurrent terms of 10

years for armed robbery and five years for attempted armed robbery. The petitioner did not appeal his convictions or sentences. The conviction became final on August 15, 2004.

The petitioner made an application for post-conviction relief filed March 29, 2005. In his application, the petitioner alleges he was being held in custody unlawfully for the following reasons:

(1) Ineffective assistance of counsel:

(a) Failed to explain that identification was subject to suppression if case had gone to trial.

(b) Failed to explain the Applicant entitled to a lesser-included offense instruction if case had gone to trial.

(c) Failed to explain that co-defendant's statements would not have been admissible at trial unless co-defendant testified.

(2) Involuntary guilty plea.

The respondents made a return on May 5, 2005. On September 14, 2005, a hearing was convened before the Honorable Larry Patterson, Presiding Judge. The petitioner was present and represented by attorney Rodney A. Richey. The respondents were represented by Karen Ratigan of the Attorney General's Office. Testimony was received from the petitioner and his plea counsel, Stephen Evans. Judge Patterson orally denied relief. A written order was subsequently entered that denied and dismissed the application in its entirety on November 22, 2005.

The petitioner made a timely notice of appeal. In the appeal, he was represented by Wanda H. Carter, Deputy Chief Attorney of the South Carolina Commission of Indigent Defense. On August 3, 2006, counsel made a *Johnson* petition for writ of certiorari and petition to be relieved as counsel. In the petition, she raised the following arguable issue: "Trial counsel was ineffective in failing to explain fully sentencing consequences in the case." On September 18, 2006, the petitioner Berry made a *pro se* response to the *Johnson* petition. On July 3, 2007, the Supreme Court of South Carolina

entered its order denying the petition and granting counsel's request to be relieved "after careful consideration of the entire record as required by *Johnson v. State*, 294 S.C. 310, 364 S.E.2d 01 (1988)." *Joseph Berry v. State*, Order, (S.C.S.Ct. July 3, 2007). The remittitur was entered on July 19, 2007.

In his *pro se* petition for writ of habeas corpus now before this court, the petitioner makes the following allegation:

> (1)   Ineffective Assistance of Counsel; Involuntary Plea of Guilty.
>
>> (a)   Counsel was ineffective for failing to explain to the Applicant that had he gone to trial, any identification made by David Sharp was subject to suppression.
>>
>> (b)   Counsel was ineffective for failing to explain that a co-defendant's statements would not be admissible during trial unless the co-defendant testified.

In his petition, the petitioner states these claims were not raised because a conflict of interest arose during the post-conviction relief hearing. In his requested relief, he asks that his "sentence is reduced and my classification level be reduced to non-violent or that the case be overturned." Petition, p. 15.

On March 20, 2008, the respondent filed a motion for summary judgment. By order filed March 21, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner moved for an extension of time to respond, which was granted, and the response was filed on June 11, 2008.

## **APPLICABLE LAW**

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

3

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is de novo. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA de novo standard of review to claims of ineffective assistance of counsel

4

> that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

## **ANALYSIS**

The petitioner raises two ineffective assistance of counsel claims: (1) counsel failed to advise him that a witness' identification of him was subject to suppression at trial, and (2) counsel failed to explain to him that his co-defendant's statement would be inadmissible at trial unless he testified. Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697. Review of counsel's performance is "highly deferential." *Id.* at 689. With respect to guilty plea counsel, a petitioner must show that there is a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The record of the guilty plea reveals that the State advised the court that the petitioner was pleading guilty to armed robbery and attempted armed robbery, which carried 10-30 years and 20 years respectively (App. 3). There was no recommendation for sentence, and the State advised the plea court that the petitioner had no prior record

(App. 3). The victims were the Pantry Store on Altamont and the Spinx Store on Batesville Road in Greenville County (App. 4). At the plea, the petitioner advised the court he was unmarried, 21 years old, and worked at Zaxby's (App. 5). He confirmed that he wished to plead guilty, was not under the influence of alcohol, drugs, or medication, and did not have any physical or emotional problems (App. 7-8). His lawyer affirmed that he had gone over with the petitioner the maximum punishment, the elements of the crime, and his constitutional rights and had no issue about competency (App. 8-9). Counsel Evans confirmed that he had received all the discovery he needed and that he agreed with the petitioner's decision to plead guilty (App. 9). The petitioner confirmed that he understood his plea was to violent and "most serious" offenses and that if convicted of another offense his sentence would be life without parole (App. 9). The petitioner affirmed that no one had predicted when he would be paroled for the offense, and Judge Hill advised him to assume he would have to serve every day (App. 9-10).

Judge Hill next went over the right to a jury trial, presumption of innocence, burden of proof, the right to present a defense and cross-examine witnesses, and his right to testify or not testify with no adverse inference (App. 12). Further, the petitioner confirmed his awareness that by pleading guilty he was giving up his right to present a defense (App. 12). In addition, he acknowledged he was giving up his right to challenge statements or confessions he made, that his attorney had subpoena power to bring witnesses in his defense, the burden of proof beyond a reasonable doubt, and a right to have the charges tried separately (App. 14). The petitioner acknowledged those rights and declared he still wanted to plead guilty (App. 14).

The factual basis presented was as follows. On March 21, 2003 around 8:30 p.m., the petitioner and Gerald Chandler entered the Pantry. Chandler presented a handgun and they attempted to rob the store, but fled before they got any money. The incident was caught on video (App. 15). Later, around 11:50 p.m., they entered the Spinx, and Chandler again presented the gun and demanded money. The petitioner then reached across and

6

took the money.  They fled in a car driven by another co–defendant (App. 16).  A pizza delivery man witnessed the incident and tried to follow the fleeing vehicle.  He called 911 and gave a partial tag number.  The car was stopped by deputies near I-385 and I-85, and the petitioner was in the car wearing the clothes described by clerk who had just been robbed. A silver handgun and a bandana worn by the petitioner were found in the car. The clerk subsequently identified the petitioner and Chandler as the persons who robbed him (App. 16).  The petitioner gave full confessions to both crimes (App. 15-16).  The solicitor advised the court that the gunman had pleaded guilty to attempted arm robbery and armed robbery and received a 15-year sentence.  The driver in the second armed robbery pleaded guilty to accessory after the fact and received a probationary sentence (App. 16).

The petitioner confirmed to the plea judge the alleged facts were what happened.  He declared there was nothing about the facts to change (App. 16).  He confirmed that there were no promises made and that he had enough time with counsel and was satisfied with his counsel's services (App. 17).

Counsel Evans, in mitigation, described his knowledge of the petitioner for a long time and surprise at the charges.  He described the petitioner as a high school graduate with steady work who lived with his mother. He described the family and employer's surprise at the crime and obviously that he fell in with the wrong person who had a long record (App. 18).  The petitioner's mother stated that her son was never in trouble until he met a man two weeks before, and she felt the man forced her son into the robberies.  She described her son as helping the family, going to church, and supporting his family (App. 18-19).  A friend, Henrietta Griffin, described the petitioner as never causing problems and as a good kid (App. 19).  Brandon Bell, the petitioner's manager at Zaxby's, said the petitioner had been employed for a year and was a hard worker (App. 19).  When Bell learned of the event, it was a shock because he worked with the petitioner a number of hours and this was out of character for him because he was a "good guy" (App. 20).

Counsel Evans stated his client had been contrite and had given a full confession and accepted accountability for the crimes. He asked for consideration of the minimum sentence (App. 20). Judge Hill noted he could not go below the minimum and sentenced the petitioner to 10 years for the robbery charge and five years concurrent on the attempted robbery charge (App. 21).

During the post-conviction relief hearing, the petitioner testified that he retained Steve Evans to represent him. He admitted giving a statement in the case and said he talked to Evans about the potential that it could be suppressed at trial (App. 45-46). The petitioner also stated that "to a certain extent" he had discussions with counsel about his co-defendant's statements (App. 46). However, he did not remember if he had a discussion with Evans about whether those statements would be used against him at trial (App. 46). The petitioner said he understood if he pleaded guilty that he could get some time, but he claimed he did not know it would be 85% or a mandatory 10-year sentence (App. 47). The petitioner admitted these answers were different than those at his plea and stated that he was "mentally out of it" at the plea. He claimed that if he had analyzed it he would not have pleaded guilty and would have had a better chance at a trial (App. 47). The petitioner denied he was personally armed during the armed robbery and denied wearing any mask (App. 48). He admitted a gun was pulled by his co-defendant, but claimed he just went in to buy a snack, and his co-defendant pulled out the weapon the second time they went into the store and he had not seen the gun before. "I didn't know what to do, so I just went with the program, because if I wouldn't have went with the program - - - he might - - - have shot me" (App. 49). The petitioner said he snatched the money while his co-defendant held the gun. He admitted that Chandler did not tell him to snatch the money (App. 49).

The petitioner said he thought his lawyer had his best interest at heart (App. 51). However, he felt he entered his plea out of anxiety and fear when his lawyer told him the plea was best rather than a trial where he could get the maximum sentence (App. 51). On cross-examination, he denied that his lawyer ever talked with him about the maximum

sentence or parole eligibility (App. 51-52). The petitioner also stated they talked about the co-defendants' statements, but that he did not know if they could be used against him at trial (App. 52). The petitioner stated he spoke with his counsel about the facts of the two robberies. He said he was hoping for a charge of strong arm robbery since he did not have a gun. However, he admitted counsel never told him that his plea was for strong arm robbery (App. 54).

Counsel Steve Evans testified that he had spoken with the petitioner about the maximum and minimum sentences (App. 55). He stated that on the day of the plea he discussed the 10-year minimum sentence with the petitioner and believed the petitioner understood it (App. 56). Evans stated he spoke with the assistant solicitor over several months about reducing the charges (App. 56). However, the State was unwilling to reduce the charge based upon the fact of two incidents. At that point, he believed it was in the petitioner's best interest to plead guilty. Evans stated he did have discussions with the petitioner regarding the fact that the co-defendants had given statements and would likely testify against him (App. 57). He also advised the petitioner about the whole picture of what evidence could be presented against him, including his confession, if was not excluded, and the co-defendants' statements or testimony. He said one co-defendant had already pleaded guilty prior to the plea, so he assumed the co-defendant was willing to testify. He said they spoke of these factors as well as the eyewitnesses (App. 57). Evans confirmed they discussed the petitioner's criminal liability even though he did not have the gun and was "just as culpable" (App. 58). Evans stated the petitioner was not "spaced out" on the day of the plea and understood what he was doing. Evans did not believe he had any chance of winning at trial (App. 58). Evans testified that he did not use any kind of coercive technique to get the petitioner to plead guilty and that he would have advised the petitioner that if he did not plead, he would be more likely to get more than 10 years (App. 59).

In denying relief, Judge Patterson found that counsel's testimony was credible (App. 65). He found that counsel adequately conferred with the petitioner, conducted a

9

proper investigation, and was thoroughly competent in his representation (App. 65). In addition, he found that the petitioner was not credible (App. 65). The State PCR court further determined that the petitioner had failed to prove either prong of the *Strickland* test (App. 66).

As argued by the respondent, the petitioner has failed to show that the PCR court unreasonably applied *Strickland*. Counsel discussed the facts of the case with the petitioner, including eyewitness testimony that could potentially be presented. The record reveals that there was a video identification, clothing identification, confessions by the petitioner, and guilty pleas by his two co-defendants prior to the entry of his pleas. At no time in his post-conviction proceeding did he present any evidence that could lead to suppression of identification or exclusion of testimony by the witnesses or co-defendants or suppression of the statements. Instead, the record suggests that the petitioner always admitted involvement, but hoped for lesser culpability of strong arm robbery. He failed to show that his counsel's performance was deficient and that without such error by his counsel he would not have pleaded guilty and would have insisted on going to trial. Accordingly, habeas relief should be denied.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 15) be granted.

                                                  s/William M. Catoe
                                                  United States Magistrate Judge

December 15, 2008

Greenville, South Carolina